SEABOARD AIR LINE RAILWAY COMPANY, A CORPORATION, *Plaintiff in Error*, v. A. R. HARPER PIANO COMPANY, *Defendant in Error.*

1. The liability of a warehouseman for the loss of goods is different from that of a common carrier.

2. Where a judgment is obtained against a railroad company as a common carrier for the loss of goods and the evidence shows that the goods were held by the railroad company not as a common carrier but as a warehouseman, and liability as warehouseman was not proven, the judgment will be reversed.

3. Where the consignee who holds the bill of lading does not refuse to take the goods but directs the carrier to hold them at destination pending negotiations between the consignee and consignor as to the goods, and this holding is in effect acquiesced in by the consignor, if the goods are lost while being so held, the liability of the railroad company is that of warehouseman and not of common carrier.

Writ of error to the Circuit Court for Alachua County.

The facts in the case are stated in the opinion of the court.

*Hampton & Hampton,* for Plaintiff in Error;

*W. S. Broome,* for Defendant in Error.

WHITFIELD, C. J.—An action was brought against the railroad company as a common carrier and judgment was obtained against the carrier for the value of a piano and for the penalties prescribed by Chapter 5618, Acts of 1907, for the failure of a carrier to pay within sixty days from its presentation a claim for freight lost by the carrier. The defendant took writ of error.

The third count of the declaration on which the judgment must be predicated does not allege facts showing a liability of the defendant, but there can be no recovery in this action on the evidence.

It appears that A. R. Harper, doing business as A. R. Harper Piano Company, consigned a piano to Miss Pemberton at Oxford, Florida. When the piano reached Oxford the consignee was notified and she requested the agent of the carrier to hold it until she could adjust with the consignor some matters relating to the purchase of the piano, Miss Pemberton holding the bill of lading showing her to be the consignee. The piano was burned with the depot of the carrier on May 17th, 1910. There is testimony that perhaps two weeks before the fire, the consignor by letter requested the agent of the carrier to hold the piano until the first of June, and if not accepted by that time, to ship the piano to another point, and also that the agent had been directed to ship the piano to another place. And there is testimony that during the day before the fire, the consignee received a letter from the piano company telling her to let the piano stay at the depot until Mr. Harper. returned from a trip. and the agent of the carrier was informed of the con-

tents of this letter. The agent of the carrier testified that as the consignee had the original bill of lading and did not surrender it or refuse to take the piano, but requested that it be held pending further negotiations as to it between the consignee and the consignor, and as the consignor had ordered it held till the first of June, and as he knew of the correspondence between the consignee and the piano company in reference to the piano, he did not re-ship the piano.

A. R. Harper, the plaintiff, testified that he did not remember writing the agent to hold the piano till the first of June, but did write the agent to ship the piano to another point; that he did not write the letter to the consignee, but that he had an office in Jacksonville and a bookkeeper was in charge of the office in his absence.

The plaintiff did not deny that authority to hold the piano had been received from his office in his absence and he only testified that he did not remember writing the agent to hold the piano till June first. The letters received by the agent from the piano company were burned with the depot and the plaintiff did not offer office copies of them to contradict the testimony of the agent of the carrier that he received instructions by letter to hold the piano till June first. Nor did the plaintiff meet the testimony that the consignee who held the bill of lading was authorized to have the piano held pending negotiations. Under these circumstances there was no showing that the piano was held by the carrier otherwise than as a warehouseman for the owner's benefit.

A reasonable time having elapsed for the consignee to receive the piano and the request of the consignee with the acquiescense of the consignor to hold the piano relieved the railroad company of its responsibility *as a common carrier* for the delivery of the piano. The testi-

mony that the consignor had directed the piano to be re-shipped to another point is unavailing as against the evidence that the request of Miss Pemberton who held the bill of lading, showing it was consigned to her, that the piano be held pending negotiations between the consignee and the consignor with reference to the piano, was acquiesced in by the letter from the piano company.

The action and the recovery against the railroad company are based upon its liability as a common carrier, while the testimony shows the relation of carrier and shipper did not exist between the railroad company and the owner of the piano.

The relation alleged is that of a carrier, while the relation shown in evidence is that of warehouseman, and not that of a common carrier. The liability of a warehouseman is quite different from that of a common carrier. 6. Cyc. 460; Moore on Carriers, 141, 161 *et seq.*

The judgment is reversed.

TAYLOR, SHACKLEFORD, COCKRELL and HOCKER, J.J., concur.